## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARIE M. McCRAY**<br>**562 Radnor Avenue**<br>**Baltimore Maryland 21212,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No. _____** |
| | * | |
| **MARYLAND DEPARTMENT OF**<br>**TRANSPORTATION,**<br>**MARYLAND TRANSIT**<br>**ADMINISTRATION,** | * | |
| | * | |
| | * | |
| **Serve on:** | * | |
| | * | |
| **Hon. Beverley K. Swaim-Staley**<br>**Secretary** | * | |
| **Maryland Secretary of Transportation**<br>**7201 Corporate Center Drive**<br>**Hanover, Maryland  21076,** | * | |
| | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Marie M. McCray, by and through the undersigned attorney, hereby sues the

governmental Defendant Maryland Department of Transportation, Maryland Transit

Administration (hereinafter referred to as variously as "Employer," "Department," "MTA," and

"MDOT") for employment discrimination in violation of Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.*  Plaintiff

contends that the Defendant Employer discriminated against her as an African American woman

over the age of 40, effecting discrimination against her because of the combination of her race,

gender and age.  At the same time, this same Defendant discriminated against Plaintiff because

of her disability, in violation of the Americans with Disability Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 – 12113.

Plaintiff contends that Defendant Employer used the State's budget crisis of 2008 to target for elimination the positions filled by certain individuals because of race, gender, age, and disability whom officials at Defendant Department wanted to remove because these individuals presented certain trouble to officials in the Defendant Department because of the combination of their race, age, gender, and the circumstances presented by their disability to question the actions of these officials. Rather than entertain the concerns and questions of Plaintiff and others like her, these officials simply removed the employee. In so doing in this way, the Defendant Department discriminated against Plaintiff McCray and others like her.

In support of this action, which she prays in relevant part be tried before a jury, Plaintiff alleges as follow:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1343, in that this action, in part, arises under the Constitution of the United States and the laws of the United States and asserts a violation of civil rights secured by the United States Constitution and by federal law.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b) because the Plaintiff's causes of action arose within the District of Maryland. In addition, there is no other district within which this action may be brought, and the Defendant governmental entity is located in the State of Maryland.

## THE PARTIES

3. Plaintiff McCray is an African American female who, at the time of the events recounted herein, was an employee of the Defendant MDOT. Specifically, she was employed

by a modal component of the Defendant Department, the Maryland Transit Administration (hereinafter referred to as "MTA").   At the time relevant to the allegations of this Complaint, Plaintiff was age 64.  She resides in the State of Maryland in Baltimore City.

4.  Defendant Department is an agency of the State of Maryland created under State law for the purpose of administering, managing, and operating State activities in the area of transportation.  The headquarters for the Defendant Department is located at 7201 Corporate Center Drive, Hanover, Maryland.  The Defendant Department is further subdivided to comprise several modes that include the Maryland Transit Administration ("MTA").   The Defendant Department, through its various modes, including the MTA, openly solicits employment from members of the public, and it currently employs individuals in excess of the number of employees set forth as the threshold provided in Title VII for the applicability of its provisions. Within the sphere of activities created for the Defendant Department under State law, the MTA is responsible for administering mass transit within the State of Maryland, and the Defendant Department has assumed legal responsibility as well for supervising and administering staff of the MTA for purposes of Title VII, ADEA, and ADA.

## BACKGROUND FACTS

7.  On or about January 4, 1971, Plaintiff McCray was first hired by the Defendant Department within its component responsible for mass transportation, the Mass Transit Administration, a predecessor to the current MTA.  Plaintiff was initially hired as a draftsman, and after promotions over the years, she assumed the position next of an Engineering Technician III and then that of an Engineering Technician IV.  Through her early career with the Defendant Department, Plaintiff McCray performed her assigned duties capably in the absence of any question regarding her competence to cloud or imperil her continued employment with Defendant.

3

8.  From the late 1980s through 2005-2006, Plaintiff's duty assignment was located within the so-called Shaefer Tower at 6 St. Paul Street in downtown Baltimore City.  At this location, Plaintiff's primary supervisor was Simon Taylor, a White male.  Her principal duty was the compilation and preparation of a monthly and then annual report of rider usage for the trains and buses subject to the administration of the MTA.  In performing these duties, Plaintiff encountered no notification from any of her supervisors that she was unable to perform these duties or that her development of the report was a problem.

9.  In or about 2005-2006, the Defendant Department embarked upon a reorganization that resulted in the Plaintiff's reassignment to a MTA facility at 1515 Washington Boulevard in Baltimore City.  During the initial years of this new assignment, Plaintiff continued to perform her earlier duties, compiling and preparing the rider usage report.  In this new assignment, Plaintiff was placed with a new immediate supervisor, Rob Pond, another White Male.

10.  In or about 1995, as a result of a routine medical examination, Plaintiff was diagnosed as a diabetic.  Over the next several years, she progressed from managing her condition through medication in pill form, and then, beginning in early 2000s, in the form of insulin injections.   During this period, the Plaintiff's diabetes had no impact on her work performance.  In addition, her co-workers and supervisors were aware of her condition, as when her treatment had progressed to insulin therapy, her co-workers and supervisors knew that Plaintiff stored her medication in the office refrigerator and that she had to administer the injections.

11.  During the period from 1995 until 2007, Plaintiff encountered no difficulty on the job as a result of her efforts to manage and control her medical condition.

12.  On or about June 14, 2007, one of Plaintiff's co-workers discovered her passed out on the floor near Plaintiff's work station.   Staff called emergency personnel, and Plaintiff was

4

transported by ambulance to Maryland General Hospital where she was treated for low blood sugar and discharged the later that night.

13. Plaintiff was away from work for about the next week. She then returned after being cleared by her own doctors to resume her work duties. Plaintiff provided her supervisors with a slip from her doctors clearing her medically to return to work.

14. Despite the documentation from her own doctors clearing her to return to work, Michael Beets, the Deputy Director of the office to which Plaintiff was assigned, Service Development, suddenly took to confronting Plaintiff demanding to know whether she was "fit" to return to work. After advising Mr. Deets, a White male, that she had provided written documentation to management from her doctors of her medical fitness, Mr. Deets seemed to Plaintiff for some reason not to be satisfied with the answer, as he persisted with the questioning of the Plaintiff.

15. After some time of repeated questioning of Plaintiff regarding her fitness to return to work, Mr. Deets, now joined by human resources official, Carla Wescott, a White female, insisted that Plaintiff submit to an examination by the State's medical officers at Concerta regarding her fitness. In response to this demand, Plaintiff resisted, inquiring of Mr. Deets and Ms. Wescott why any further inquiry was needed regarding her fitness since she had returned to work, was then performing her duties without difficulty, and her own doctors had given documentation clearing her to return. In addition, Plaintiff had previously consulted her union, MCEA, and advised the two officials that the union office had told her that management had no right to demand that she submit to any medical examination without making a written request explaining the reasons. As a result, both Mr. Deets and Ms. Wescott left Plaintiff without providing her any explanation for their requests of her and showing every indication that they were frustrated and upset by her unwillingness to accept their insistence without questioning.

16.  Within a short time of the encounter with Plaintiff regarding the request that she submit to an examination by Concerta, Mr. Deets and Ms. Wescott again confronted Plaintiff, this time with a written request that she submit to a medical examination by the medical staff at Concerta to confirm her fitness to resume her duties.

17.  As a result of receiving the written request from Mr. Deets and Ms. Wescott, Plaintiff appeared at Concerta for a medical examination to ascertain her fitness to return to work.  During the course of this requested examination, the medical official performed no tests and conducted no examination other than to ask the Plaintiff what her own doctors had done.  Following this "examination," the medical official at Concerta affirmed in writing Plaintiff's fitness to resume her duties.

18.  Even after providing documentation from her own doctor that she was fit to resume her duties, and after she had been examined by the medical staff at Concerta and these officials had affirmed her fitness to resume her duties, Mr. Deets still continued to plague Plaintiff with his questions whether she was fit to resume her duties, as if he desired a different answer than the one he had received.  It appeared to Plaintiff that Mr. Deets was seeking to justify removing Plaintiff from her position.

19.  After Plaintiff returned from seeing the staff at Concerta, she proceeded with the rider usage monthly reports for the balance of 2007, and, during the beginning of 2008, she completed the annual report for 2007.  As her work for 2008 began, Plaintiff's assignment to compile and prepare the rider usage reports were reassigned to a consultant.  Plaintiff avers on information and belief that Mr. Deets directed to the consultant this reassignment of her responsibilities regarding the riser usage.

20.  As a result, for the balance of 2008, Plaintiff was left without significant work to perform.  She repeatedly sought additional work from her supervisor, Mr. Pond.  Despite the fact

that other staff in the Service Development unit, including Mr. Pond, appeared overwhelmed with work, none of this work was assigned to Plaintiff.

21.   On or about October 15, 2008, Plaintiff was summoned to a meeting with Mr. Deets and MDOT Human Resources Director Judy Slater, where Plaintiff was informed that she was to be laid off, her position to be abolished, and that her last day as an employee of the Defendant Employer would be October 30, 2008.

22.   On April 6, 2009, less than 6 months later, Plaintiff appeared for an intake interview at the United States Equal Employment Opportunity Commission ("EEOC") to commence the investigation relating the allegations underlying this action.  During the course of that investigation, Plaintiff provided the EEOC investigator with the underlying assertions forming this action for employment discrimination on the basis of race, gender, age, and disability.

23.   On or about September 26, 2011, the EEOC issued its notice of Plaintiff's right to sue through a mailing to Plaintiff postmarked on September 27, 2011, which mail she did not receive until a number of days thereafter.

## CAUSE OF ACTION

### COUNT I
**(Race and Gender Discrimination in Violation of Title VII; and Age Discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 – 634)**

24.   Plaintiff realleges the assertions made in paragraphs 1 through 23 as if these paragraphs had been fully set forth herein.

25.   Within a timely period in 2009, Plaintiffs filed with the EEOC charges of employment discrimination, the investigation of which included allegations of race, gender, and age discrimination, in that Plaintiff contended that her filled position had been targeted by Defendant Employer for elimination because it was filled by an African American woman of age greater than 40.  In making this allegations part of the EEOC investigation, Plaintiff  proceeded

in accordance with the procedural requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and on account of age, in accordance with the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 – 634.

26.  In her interaction with the EEOC, Plaintiff contended that she was one of a group of individuals slated for abolition of their filled positions by Defendant MDOT, and that this group of persons identified for the elimination of their positions were disproportionately African American, female, and older than age 40.

27.  Defendant Employer has acted unlawfully against Plaintiff, in violation of Title VII and the ADEA, in that officials of the Defendant Employer proceeded to remove Plaintiff from her position as a result of a pretextual decision to eliminate her position for budgetary reasons, which action was in reality a decision to remove Plaintiff because she happened to offend the racial, gender, and age sensibilities of a number of its officials through which these officials entertained a prevailing expectation that such personnel as Plaintiff represented, African American, female, and aging, be accepting without questioning of the authority that these officials embodied and that Plaintiff not present any difficulty to the official.  In so proceeding, these officials of the Defendant employer unlawfully discriminated against Plaintiff in the following ways:

a. Because of her membership in racial, gender, or age group that they expected could manifest no power properly to question their authority, they singled Plaintiff out for otherwise unjustified harangues, harassments, and intimidations about questions regarding her medical fitness in order to cause her to give up her employment.

b. Because of her membership in a racial, gender, or age group that they expected could manifest no power properly to question their authority, they singled out Plaintiff to remove desirable, important and high profile work from her for reassignment to others not members of

the racial, gender, or age group represented by Plaintiff, in order specifically to make her vulnerable to position abolition; and

              c. Because of her membership in a racial, gender, or age group that they expected could manifest no power properly to question their authority, they used the opportunity of a budget crisis to eliminate from State service such staff as Plaintiff, who represented a particular supervisory problem for management.  In her case, that problem consisted of her unfulfilled demands that she be given work that was otherwise plentiful in her unit, and, as to which demand, none of her managers could offer any satisfying answer why such work was not available to her.

28.  The Defendant's decision to eliminate Plaintiff's position forms a pattern of discrimination with other individuals whose positions were identified to be eliminated at or about the same time as Plaintiff's position was identified for abolition.  These individuals disproportionately comprised African American females, of senior stature because of their age, that their presence with Plaintiff in the numbers presented embodies a common discriminatory *animus* unrelated to any budgetary need.  These individuals, like Plaintiff, were subjected to discrimination for reasons of the combination of their race, gender, and age.

29.  The actions undertaken against Plaintiff, as referred to in Paragraphs 27 and 28, were undertaken because of racial, gender, and age aversion by certain White managers with respect to senior and experienced African American female personnel.   As a result, Plaintiff avers, on information and belief, that officials of Defendant Department worked in concert to deny her, for reasons of race, gender, and age, continued work in her former position in circumstances intended to circumvent the protections of federal civil rights laws.

30.  In so proceeding on behalf of the Defendant Department, certain officials of the Defendant Department acted with malice deliberately to injure the federally protected interests of Plaintiff.

31.  As a direct and proximate result of the Defendant Department's wrongful acts, Plaintiff has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering, from actions undertaken by certain officials of Defendant Department to discriminate against her for reasons of her race, gender, and age.

WHEREFORE, Plaintiff McCray demands judgment against Defendant Employer for compensatory damages of Four Hundred Thousand Dollars ($400,000.00), plus legal fees, costs, expenses of suit, and any other relief, including but not limited to, injunctive relief to afford Plaintiff the opportunity to restore her career in state service and reclaim her former position, in addition to such other relief that the Court or a jury deems proper.

## COUNT II
**(Disability Discrimination in Violation of Americans with Disability Act of 1990, 42 U.S.C. §§ 12101 – 12113)**

32.  Plaintiff realleges the assertions made in paragraphs 1 through 23 as if these paragraphs had been fully set forth herein.

33.  Within a timely period in 2009, Plaintiffs filed with the EEOC charges of employment discrimination, the investigation of which included allegations of disability discrimination, in that Plaintiff contended that her filled position had been targeted by Defendant Employer for elimination because it was then filled by an African American woman of age greater than 40 who presented an issue of disability accommodation that proved itself problematic for management.  In making this allegation part of the EEOC investigation, Plaintiff proceeded in accordance with the procedural requirements of Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101 – 12113.

10

34. In her interaction with the EEOC, Plaintiff contended that she was one of a group of individuals slated for abolition of their filled positions by Defendant MDOT, and that this group of persons identified for the elimination of their positions were disproportionately African American, female, older than age 40, and persons who happened to present troubling histories regarding the Defendant Department's mishandling of their identified disability concerns.

35. Defendant Employer has acted unlawfully against Plaintiff, in violation of the ADA, in that officials of the Defendant Employer proceeded to remove Plaintiff from her position as a result of a pretextual decision to eliminate her position for budgetary reasons, which action was in reality a decision to remove Plaintiff because she happened to offend the expressed and repeated sensibilities of a number of its officials to entertain a prevailing expectation that such personnel as Plaintiff represented, who had some potentially disabling medical condition, should be subject to justify repeatedly their continued fitness to perform duties that no evidence of failed performance had called into question. In so proceeding, these officials of the Defendant employer unlawfully discriminated against Plaintiff because of her diabetes in the following ways:

a. Because of Plaintiff's resistance to accept the repeated and unjustified questioning of her fitness for work, these officials of Defendant Department singled Plaintiff out for otherwise unjustified harangues, harassments, and intimidations about questions regarding her medical fitness in order to cause her to give up her employment.

b. Because of Plaintiff's resistance to accept the repeated and unjustified questioning of her fitness for work, officials of Defendant Department singled out Plaintiff to remove desirable, important and high profile work from her for reassignment to others not manifesting any disability issue as was presented by Plaintiff, in order specifically to make Plaintiff vulnerable to position abolition; and

11

c. Because of Plaintiff's resistance to accept the repeated and unjustified questioning of her fitness for work, officials of Defendant Department used the opportunity of a budget crisis to eliminate from State service such staff as Plaintiff, who represented a particular supervisory problem for management.  In her case, that problem consisted of her unfulfilled demands that she be given work that was otherwise plentiful in her unit, and, as to which demand, none of her managers could offer any satisfying answer why such work was not available to her.

36.  The Defendant's decision to eliminate Plaintiff's position forms a pattern of discrimination with other individuals identified with Plaintiff for termination because their positions were abolished.  These individuals were disproportionately comprised African American females, of senior stature because of their age, and who disproportionately, like Plaintiff, presented troubling issues of disability as to which the Defendant Department mishandled.  The presence of such persons in such numbers with Plaintiff embodies a common discriminatory *animus* associated with their disability, unrelated to any budgetary need.  These individuals, like Plaintiff, were subjected to discrimination for reasons of their disability.

37.  The actions undertaken against Plaintiff, as referred to in Paragraphs 35 and 36, were undertaken because of the disability aversion by certain managers with respect to senior and experienced African American female personnel who present a management issue bearing upon their disability.   As a result, Plaintiff avers, on information and belief, that officials of Defendant Department worked in concert to deny her continued employment for reasons of her medical condition which Defendant treated as a disability in circumstances intended to circumvent the protections of federal civil rights laws.

12

38.  In so proceeding on behalf of the Defendant Department, certain officials of the Defendant Department acted with malice deliberately to injure the federally protected interests of Plaintiff.

39.  As a direct and proximate result of the Defendant Department's wrongful acts, Plaintiff has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering, from actions undertaken by certain officials of Defendant Department to discriminate against her for reasons of her disability.

WHEREFORE, Plaintiff McCray demands judgment against Defendant Employer for compensatory damages of Four Hundred Thousand Dollars ($400,000.00), plus legal fees, costs, expenses of suit, and any other relief, including but not limited to, injunctive relief to afford Plaintiff the opportunity to restore her career in state service and reclaim her former position, in addition to such other relief that the Court or a jury deems proper.

Respectfully submitted,

/s/
John H. Morris, Jr.
Trial Bar No. 00325
1210 East 33rd Street
Baltimore, Maryland 21218
(410) 366-5683

Attorney for Plaintiff McCray

<u>REQUEST FOR JURY TRIAL</u>

Plaintiff, Marie M. McCray, by and through the undersigned attorney, hereby requests trial by jury with respect to such portions of their claim as to which each is entitled a jury trial.

/s/
John H. Morris, Jr.