IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARIE M. McCRAY** | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No. ELH-11-3732 |
| **MARYLAND DEPARTMENT OF TRANSPORTATION, MARYLAND TRANSIT ADMINISTRATION,** | * * | |
| | * | |
| **Defendant.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR , IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff, Marie M. McCray, by and through the undersigned attorney, hereby submits this memorandum opposing the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons stated herein, the Defendant's Motion should be denied.

### INTRODUCTION

For its initial response to the Plaintiff's Complaint, Defendant Maryland Department of Transportation, Maryland Transit Administration (henceforth variously referred to as "Defendant Agency," "MDOT" or "MTA"), has moved to dismiss, or in the alternative, for summary judgment. In large part, the Defendant Agency is seeking to preempt the trial process in order to resolve the allegations of the Plaintiff without the benefit of pretrial discovery.

Defendant Agency seeks to avoid the scrutiny a legal action presents by raising as a defense to liability the legal privilege that a legislative body generally enjoys with respect to its prerogatives to make budgetary decisions and eliminate governmental positions. The

Defendant here invokes this legal immunity not to protect otherwise legitimate legislative decisions but to provide governmental employers with a license to discriminate in choosing the particular personnel to be subject to the budget axe mandated by the legislature.  While the mandate to cut may be beyond scrutiny, the selective choosing of some employees rather than others to be subject to the budget axe is not.

This action is not a challenge of the legislative prerogative to suspend funding for a given position of employment.  Instead, the Plaintiff's Complaint is quite explicit in alleging that the Plaintiff's supervisors abused the discretion afforded them by the legislature to remove personnel by applying considerations in selecting employees to have their positions abolished using considerations that the law forbids – race, age, gender, disability, and the employee's prior invocation of protected status.  Here the Defendant is using the law's immunity to foreclose the very scrutiny of these allegedly unlawful motivations that pretrial discovery would otherwise afford.  For the reasons set forth herein, the Defendant Agency ought not to be allowed to use the law to evade the law's obligation.  This Motion, raising facts outside the complaint, is premature for fair resolution in the absence of the adversarial testing that pretrial discovery affords.  Accordingly, the Defendant's Motion should be denied, and the Defendant required to file an answer to proceed with litigation of these claims.

## BACKGROUND FACTS

Plaintiff is an African American woman older than 40 who has worked for the Defendant Agency in various capacities since January 4, 1971.  After more than 36 years of State service without difficulty, she began to encounter problems with her supervisors after an episode on June 14, 2007 when she was found unconscious near her work station as a result of diabetic shock and taken to the hospital.  Until that occasion, the Complaint alleges that Plaintiff's medical condition was known by her coworkers and supervisors alike.  After the incident, she began to be plagued by repeated questions regarding her

fitness to remain at work and efforts to restructure her work assignments to direct work she had previously performed to other staff and consultants.

By about 16 months after she had returned to work from her hospitalization, Plaintiff was notified that her position was to be eliminated, and her near 38 years of State service was to end.

Plaintiff was not satisfied with the notion that what happened to her was an isolated incident of budget cutting. As she experienced the budget cutting at MTA with other employees, Plaintiff discovered that she was not alone in having her position selected wrongfully by MTA administrative personnel for elimination.

The complaint alleges "that she was one of a group of individuals slated for abolition of their filled positions by Defendant MDOT, and that this group of persons identified for the elimination of their positions were disproportionately African American, female, and older than age 40." Complaint, ¶ 26. She contended in the Complaint that "Defendant Employer has acted unlawfully against Plaintiff, in violation of Title VII and the ADEA, in that officials of the Defendant Employer proceeded to remove Plaintiff from her position as a result of a pretextual decision to eliminate her position for budgetary reasons, which action was in reality a decision to remove Plaintiff because she happened to offend the racial, gender, and age sensibilities of a number of its officials through which these officials entertained a prevailing expectation that such personnel as Plaintiff represented, African American, female, and aging, be accepting without questioning of the authority that these officials embodied and that Plaintiff not present any difficulty to the official." Complaint, ¶ 27.

In its response to the allegations of the Complaint, the Defendant Agency merely dismisses the allegations of the Complaint as conclusory and just as conclusorily asserts its non-discriminatory budgetary reasoning.

**PROCEDURAL BACKGROUND**

On or about April 6, 2009, Plaintiff initiated the administrative process for bringing a discrimination claim by completing an intake questionnaire with the United States Equal Employment Opportunity Commission ("EEOC"). A true copy of the EEOC Intake Questionnaire for Plaintiff is appended hereto as Exhibit A.

As the Intake Questionnaire reflects, her initial basis for discrimination was age. But during the course of the EEOC investigation, Plaintiff made plain to the investigator her belief that the discrimination from which she suffered embraced more than age, but involved her race, gender, disability, and her prior efforts as well to secure protected status under the federal statutes. As the EEOC determination letter reveals, *see* Attachment 3, Declaration of Dawnn McCleary-Evans (Exhibit B), the investigation conducted by the EEOC embraced all these issues now presented in this litigation.

Under cover of the determination letter dated September 26, 2011, the EEOC issued to Plaintiff notice of her right to proceed with litigation. Timely, Plaintiff brought this action on Tuesday, December 27, 2011, the first business day following the Christmas holiday weekend. The Complaint was served on the Defendant Agency on Saturday, April 21, 2012. On June 1, 2012, the Defendant Agency filed the instant motion as its first response to the Complaint allegations.

Specifically, the Motion contends that the Complaint fails to state a claim for relief and may be dismissed under Rule 12(b)(6) of the Federal Rules of Evidence. In addition, submitting material in support of the motion beyond a challenge of the Complaint allegations themselves, the Defendant Agency seeks summary judgment on grounds that (1) Plaintiff cannot controvert is factual presentation purporting to show that Plaintiff's

claims are subject to legislative immunity regarding the decision to suspend funding to support the Plaintiff's position, (2) the evidence offered by Defendant establishes a discriminatorily neutral reason for the actions against Plaintiff, and (3) that the Plaintiff's action was submitted too late to the administrative agency to avail Plaintiff the benefit of remedies under the civil rights laws.

### ARGUMENT

In moving to dismiss the Plaintiff's Complaint and proceeding to secure Summary Judgment as their initial response to this Complaint, the Defendant is effectively seeking to litigate this matter without giving the Plaintiff effective benefit of the trial process.

### LEGAL STANDARD

**A. Motion to Dismiss**

Under the established case law, a motion to dismiss "should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the court is required *to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.*"  *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 482 (D. Md. 2006)(emphasis added).  *See also Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to dismiss, Plaintiff[s] must have alleged facts that show that they are entitled to relief on their substantive causes of action."  *In re Criimi Mae, Inc. Securities Litigation,* 94 F. Supp. 2d 652, 656 (D. Md. 2000).

### B. Summary Judgment

Under Rule 56, the only determination for this Court on summary judgment is whether there exists on the record presented a factual question that, consistent with the assurance of the Seventh Amendment, only a jury could resolve, where, as here, a jury trial has been prayed. Accordingly, under this standard, it is not for this Court to weigh evidence, balance its implications, or assess witness credibility, all of which activities are within the province of a jury.

The case law generally recognizes that, in discrimination cases, "courts should be wary of summary judgment motions because a party's intent is often the crucial element in such cases." *Johnson v. Runyon*, 928 F. Supp. 575, 579 (D. Md. 1996), *citing Texas Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 254 n. 8 (1981). See *also Evans v. Technologies Applications & Service Company*, 80 F.3d 954, 958-959 (4th Cir. 1996). While summary judgment is nonetheless appropriate where there exists no "genuine issue of material facts," *see Johnson v. Runyon*, 928 F. Supp. at 579, the question here is whether the record on summary judgment is devoid of such a dispute.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is not permitted where the record reflects otherwise admissible proof that would permit a reasonable jury to conclude inconsistent with the movant's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Anderson *v. Liberty Lobby, Inc.*, 411 U.S. 242 (1986). Under Rule 56, the court is required to view the record in the light most favorable to the nonmoving party. *See Evans v. Technologies Applications & Service Company*, 80 F.3d at 958.

An employer may prevail on summary judgment ordinarily only "if the plaintiff

fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group Incorporated*, 61 F.3d 270, 274 (4th Cir. 1995)(emphasis added), citing, Mitchell Data General Corp., 12 F3d 1310, 1316 (4th Cir. 1993); *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992).  Within the context of a summary judgment analysis, the court must apply the proof requirement to ascertain whether there is "direct or circumstantial evidence of 'a stated purpose to discriminate . . . of sufficient probative force to reflect a genuine issue of material fact.'"  *See Henson v. Liggett* Group, *Incorporated*, 61 F.3d at 274.

> A. **THE ALLEGATIONS OF THE COMPLAINT TOGETHER WITH THE SUPPORTED UNDERPINNINGS OF THE PLAINTIFF'S FACTUAL NARRATIVE ARE SUFFICIENT TO SUSTAIN A PERMISSIBLE INFERENCE OF DISCRIMINATION BY THE DEFENDANT AGENCY.**

The underlying allegations are not so straight forward as the Defendant Agency would suggest.  This is not a case where the legislature has mandated the closing of an entire agency eliminating an identified class of positions by fiat.  Rather, in this execution of the legislative mandate, executive branch officials exercised discretion to select the positions to be eliminated and exercised that discretion to include positions occupied by existing State employees.  By implication, these same officials exercised their discretion not to eliminate the positions occupied by other State employees.

Accordingly, the focus of the allegations of the Plaintiff's Complaint is not the decision of the legislature to take action to eliminate a given number of positions.  Rather, the Plaintiff's concern is the decision-making of the executive branch managers in selecting both who would be burdened by the positions eliminations and who would not.  Plaintiff contends that the officials of the Defendant Agency exercised that discretion to effect the

discriminatory termination of African American woman of age greater than 40, with a history of disability and insistence that the State acknowledge the protections that they enjoyed under the federal civil rights laws.

Without question, if such allegations were true, Defendant has cited not a single case that would afford legal immunity to the Defendant employer. Accordingly, the Defendant's motion to dismiss should be denied.

### B. THE RACIALLY NEUTRAL EXPLANATION OFFERED HERE INVOLVES IMPORTANT QUESTIONS OF DISPUTED FACT ULTIMATELY DEPENDENT ON THE IDENTIFIED NEED FOR PRETRIAL DISCOVERY.

The thrust of Defendant's racially neutral response to the Plaintiff's assertions, beyond denying that race was an issue, is exclusively tied to the credibility of the decision-makers in making a judgment not premised entirely upon considerations of budget. In response, Plaintiff does not at this time seek to controvert these assertions. Rather, Plaintiff invokes, by reliance upon the Declaration of Dawnn McCleary-Evans and that of counsel John H. Morris, Jr., the provisions of Rule 56(d) of the Federal Rules of Civil Procedure.

Rule 56(d) provides discretion to the trial court to deny summary judgment where it appears that the non-moving party fairly cannot proceed to controvert the factual record developed by the moving party without necessary resort to pretrial discovery. To appeal effectively to that discretion, a non-moving party must request such relief through a showing by affidavit that (1) discovery would likely enable the party to challenge the motion, and (2) there are sound reasons why the party has not availed itself of discovery until now.

The procedural status of this litigation is such that neither party has had an effective

chance at pretrial discovery. This motion is the first contested pleading in this litigation.

As to the prospect that discovery will disclose facts as to place in controversy the factual assertions offered here by the Defendant, Ms. McCleary-Evans's Declaration makes plain several points of weakness in this record. Beginning with the inconsistencies in the underlying factual presentation, this record itself conflicted as to the number of underlying positions eliminated, the number of eliminated positions occupied by an existing employee, and the number of such employees with a documented disability. *See* McCleary-Evans Declaration, ¶¶ 6-9. In this case, discovery at the very least will clarify the record for consideration.

To the point of Rule 56(d), the record relied upon by the Defendant proceeds on assertions that even the most cursory discovery may belie. Was the selection of positions truly blind as to the identity of existing personnel in the positions? The interview of Ralign Wells reported by the Defendant Agency to the EEOC, see McCleary-Evans Declaration at ¶ 10 appears to suggest it was, while the Declaration of Henry Kay is significantly less adamant on this point. Clearly, if positions were being selected for elimination with knowledge by management of who the employee was who currently occupied the slot, then one of the factual foundations of Plaintiff's contentions is established, and the implication that Defendant's officials were single-mindedly focused only on saving budget dollars by eliminating non-critical positions is undermined.

The McCleary-Evans Declaration further offers that hiring continued through the elimination of positions. See ¶ 11. The Defendant Agency was at the same time removing and adding staff. That circumstance raises as a fair issue as to who was being hired while others were being terminated, and how the Defendant's managers exercised this discretion.

9

Most troubling for the Defendant's assertions, the McCleary-Evans Declaration establishes that at least one White male employee was rehired within weeks of having his position eliminated. Discovery will reveal whether the two acts proximate in time, the decision to eliminate the position occupied by an employee and a decision to rehire that same employee were related. Discovery will further reveal whether such incidents were limited to this one occurrence, or whether such events were common. Ms. McCleary-Evans has attested to five other instances of rehire. Discovery will confirm the circumstances of these events, the proximity of the rehire to the elimination of the positions, the decision makers involved, and whether the decision-makers involved in these incidents were also involved in the decision involving the Plaintiff. The issue raised by Plaintiff's allegations and the McCleary-Evans Declaration is whether officials of the Defendant Agency were manipulating the elimination of PINS to reflect their personal social biases.[1]

Last, discovery will uncover the criteria utilized for selecting positions to be eliminated and allow the parties to explore whether the criteria are rationally applied to account for the decisions of which positions were eliminated and which were not. Should such criteria not account for such decisions, and should the Defendant's asserted grounding of the decision-making on consideration of budget not prevail, discovery will then sustain conflicts and questions regarding the truthfulness of the assertions supporting the Defendant's asserted rationale as to call into question the Defendant's discrimination-

---

[1] Such is the allegation offered by one Fair Practices Officer consulted by Ms. McCleary-Evans in her research regarding the allegations of the case. Jennifer Jenkins, a Fair Practices Officer in the State Highway Administration shared such insights with Ms. McCleary-Evans. In addition, Ms. McCleary-Evans identified another Fair Practices Officer, Charles Brown, whose position was eliminated in 2008, as another source who may have direct knowledge of such manipulation of position eliminations. Such witnesses, according to Ms. McCleary-Evans were not freely available and would

neutral reasons.  *See generally Reeves v. Sanderson Plumbing Products, Inc.,* 500 U.S. 133 (2000).  *See generally* Declaration of John H. Morris, Jr., appended hereto as Exhibit C.

Accordingly, the Court should exercise its discretion under Rule 56(d) and deny the Defendant's Motion.

### C. THE CONDUCT OF THE INVESTIGATION IN THIS CASE SUSTAINS NO REASON NOT TO TREAT THE PLAINTIFF'S CONCERNS AS ARISING REASONABLY FROM HER ORIGINALLY FILED DISCRIMINATION CHARGE.

Within 7 months of notification that her position would be eliminated, Plaintiff submitted an intake questionnaire expressing the desire to prosecute a charge of age discrimination with the EEOC.  Her modifications of her charge changed nothing of the focus of its concern from the decision of the Defendant Agency to eliminate her position.  Whatever the basis asserted for discrimination, it was clear that Plaintiff was not accepting as valid the Defendant's assertion that the decision to select her occupied position for elimination was solely budget-based.  Plaintiff modified and expanded her charge in the middle part of 2010 to include the additional bases for her assertion of discrimination to embrace race, gender, disability, and retaliation in addition to the original assertion of age.

As the charge expanded, Defendant makes no assertion that the investigation of the charge was somehow affected or that their response to the expanded charge was otherwise prejudiced.  Indeed, a review of the Defendant's response, *see* Attachment 4 to the McCleary-Evans Declaration, reveals that the Defendant was fully engaged on the issues presented in this litigation.

The record discloses that the EEOC proceeded with this investigation to embrace all of the allegations presented in this lawsuit.  *See* Determination Letter, Attachment 3 to

---

otherwise be available with the benefit of compulsory process.

the McCleary-Evans Declaration.  Nothing in this record would remotely demonstrate that this Defendant was derived of adequate notice or that the EEOC failed to investigate the breath of the issues presented in this litigation.  See Conroy v. Boston Edison Co., 758 F. Supp. 54, 59-60 (D. Mass. 1991).  Moreover, the record presented makes no contention as to when it is contended that the Plaintiff should have had knowledge that race, gender, disability or any other concerns subsequently raised to trigger an obligation to raise that issue with age.  This issue may be one that discovery may well clarify.

## CONCLUSION

For the reasons set forth herein, the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment should be denied.

Respectfully submitted,

\_\_/s/_____
John H. Morris, Jr.
1210 East 33rd Street
Baltimore, Maryland  21218
(410) 366-5683

Attorney for Plaintiff McCray

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th Day of August 2012, a true copy of the foregoing Memorandum In Opposition to Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment was electronically transmitted to the Clerk of this Court in accordance with this Court's electronic filing system in the expectation that the Clerk would transmit this pleading electronically to Eric S. Hartwig, Assistant Attorney General, Offices of the Attorney General, Maryland Transit Administration, 6 Saint Paul Street, 12th floor, Baltimore, Maryland 21202

                                                /s/
                                    John H. Morris, Jr.