IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIE M. MCCRAY,

    *Plaintiff*,

    v.

MARYLAND DEPARTMENT OF
TRANSPORTATION, MARYLAND
TRANSIT ADMINISTRATION,

    *Defendants*.

Civil Action No. ELH-11-3732

**MEMORANDUM OPINION**

This case comes to the Court on remand from the United States Court of Appeals for the

Fourth Circuit. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480 (4th Cir. 2014). The case arises

from a suit filed by Marie M. McCray in December 2011 against her former employers, the

Maryland Department of Transportation ("MDOT") and the Maryland Transit Administration

("MTA"), a unit within MDOT. McCray alleged that defendants selected her position for

elimination from the State's fiscal year 2009 Budget because of her race, gender, age, and

disability. "Original Complaint," ECF 1. McCray, who is African-American, was a 64-year-old

diabetic when her employment was terminated in October 2008. Memorandum Opinion, ECF 18

at 1; *see also McCray v. Md. Dep't of Transp.*, Civ. No. ELH-11-3732, 2013 WL 210186, at *1

(D. Md. Jan 16, 2013). Plaintiff's position was one of about 830 State jobs eliminated in 2008

by operation of law, in connection with substantial budget cuts implemented by Governor Martin

O'Malley and the Maryland Board of Public Works (the "Board").[1]  *McCray*, 2013 WL 210186 at *1.

In her suit, McCray claimed violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*.; Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101-12113; and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 ("ADEA").  ECF 1 at 1-2, 8.  Prior to discovery, this Court granted summary judgment in favor of defendants, on the ground that decisions implementing the budget cuts, including the one eliminating McCray's job, were protected legislative conduct, and thus suit was barred by legislative immunity.  Memorandum Opinion, ECF 18 at 17, 25; *see McCray*, 2013 WL 210186, at *15, *17.

On appeal, the Fourth Circuit held that McCray's ADA and ADEA claims were barred by sovereign immunity.  *McCray*, 741 F.3d at 481.  Moreover, the Fourth Circuit agreed that "'enacting a budget is a legislative act.'"  *Id*. at 485 (citation omitted).  And, it also ruled that this Court's "conclusion" barring the Title VII claim on the basis of legislative immunity was "correct insofar as it shields the MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts."  *Id*. at 485.  But, the Court was of the view that "the complaint allege[d] discriminatory conduct that occurred before any legislative activity."  *Id*. at 481; *see also id*. at 485.  In the Fourth Circuit's view, dismissal was premature under Fed. R. Civ. P. 56(d), because McCray had not been afforded "the opportunity to discover evidence necessary to her claims . . . ."  *Id*.  Specifically, the Court pointed to

---

[1] The Board is composed of the Governor, the State Comptroller, and the State Treasurer. *See* Md. Const. art. XII.  It bears responsibility for supervising all public works in the State of Maryland.  *See id*.

McCray's allegations that "her supervisor at the MTA stripped her of responsibilities in the years leading up to budget cuts" and "refused to give McCray additional responsibilities, even after she asked for more work." *Id*. at 486.  Therefore, the Court vacated and remanded for consideration of claims related to actions that occurred "well before any legislative activity." *Id*. at 484.

These pre-budget-cut allegations are now the focus of McCray's amended claims.  *See* "Amended Complaint," ECF 36.  In her Amended Complaint, filed March 2014, McCray also changed her ADA claim from Title I of the ADA, codified at 42 U.S.C. §§ 12101-12113, to Title II of the ADA, codified at 42 U.S.C. §§ 12131-12133.  In addition, she added claims for violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. §§ 791-794, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2009), § 20-606(a)(1)(i) of the State Government Article ("S.G."), based on the same alleged discriminatory conduct.  *Compare* ECF 1 at 1-2, 8 (claims), ECF 1 at ¶¶ 7-23 (factual allegations) *with* ECF 36 at 1-2 (claims), ECF 36 at ¶¶ 7-23 (identical factual allegations).

Defendants have responded with a "Motion to Dismiss the Amended Complaint" (ECF 37) (together with its supporting memorandum, ECF 37-1, "Motion"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF 37 at 1.  They contend that McCray failed to exhaust administrative remedies with respect to the Title VII claim and that her claims under the Rehabilitation Act and MFEPA are barred by limitations.  In addition, they assert that the ADA and ADEA claims are barred for the reasons previously stated by the Fourth Circuit.  ECF 37 at 2, 7.  Plaintiff has filed an opposition ("Opposition," ECF 48), to which defendants have replied ("Reply," ECF 49).

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion.

## Factual Background[2]

The MDOT is a "principal department" of the Maryland State government.  Md. Code (2008 Repl. Vol, 2012 Supp.), § 2-101 of the Transportation Article ("Transp.").  The MTA is one of nine statutorily created units, or "modal administrations," within the MDOT, *see* Transp. § 2-107(a)(3), and is responsible for administering the mass transit system in the Baltimore metropolitan area and other parts of the State of Maryland.  ECF 36 ¶ 4.  The Secretary of the MDOT, who is appointed by the Governor with the advice and consent of the State Senate, Transp. § 2-102(a), bears statutory responsibility for the budgets of the MDOT and each of its modal administrations.  *See* Transp. § 2-103(a).

McCray worked at the MTA from January 1971 until her position was eliminated in October 2008.  ECF 36 ¶¶ 7, 21.  During the relevant time period, McCray was assigned to the MTA Office of Service Development, *id.*  ¶ 14, and was responsible for preparing monthly and annual rider usage reports.  *Id.* ¶¶ 8-9.  After plaintiff was diagnosed with diabetes in 1995, she began storing medication for her condition at work and administering insulin shots at her office.  *Id.* ¶ 10.  She alleges that prior to 2007 she did not encounter any difficulties in performing her job as a result of her diabetes.  *Id.* ¶ 11.  However, on June 14, 2007, she fainted at the office due to low blood sugar, and was transported to the hospital.  *Id.* ¶ 12.

---

[2] For the purpose of the Motion, the relevant facts are largely undisputed.  Much of this section is drawn from plaintiff's complaint, as amended, and from my prior opinion in this case. *See* Memorandum Opinion, ECF 18 at 3-9; *McCray*, 2013 WL 210186 at *1-4.  As discussed, *infra*, to the extent that any material facts are in dispute, in resolving defendants' 12(b)(6) motion, I have viewed those facts, including reasonable inferences to be drawn from them, in the light most favorable to plaintiff.  *See Dennis v. Columbia Colleton Med. Center, Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  In resolving defendants' 12(b)(1) motion, I may "regard the pleadings as mere evidence on the issue."  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A week later, McCray was cleared by her doctors and returned to work.  *Id.* ¶ 13.  McCray alleges that, upon returning to the office, Michael Deets, then the Deputy Director of Service Development, questioned her repeatedly about her health.  *Id.* ¶¶ 14-15.  Deets, along with Carla Wescott, a human resources official, insisted that McCray submit to further medical examination by "the State's medical officers at Concerta," but McCray refused in the absence of a written request. *Id.* ¶ 15.  After Deets and Wescott procured a written request, McCray underwent an examination by Concerta, and she was cleared to resume work.  *Id.* ¶ 17.  Nevertheless, Deets continued to "plague" McCray "with questions about whether she was fit to resume her duties."  *Id.* ¶ 18.  McCray maintains that Deets was "seeking to justify removing [her] from her position."  *Id.*

In early 2008, Deets reassigned McCray's responsibilities for rider reports to a consultant. *Id.* ¶ 19.  According to McCray, she had no other significant job responsibilities, and was unable to obtain additional work, even though she "repeatedly sought additional work from her supervisor" and "[d]espite the fact that other staff" in the unit "appeared overwhelmed with work."  *Id.* ¶ 20.

Under Maryland Law, the General Assembly's appropriation for a job position with the State may be abolished in one of three ways: (1) the Governor may omit the position from the annual budget bill presented to the State legislature; (2) the General Assembly may strike an appropriation included in the budget bill presented by the Governor; or (3) the Governor, with approval of the Board, may reduce an appropriation previously included in the budget bill, as enacted.  *See* 76 Md. Op. Atty. Gen. 330, 1991 WL 626528, at *1 (Sept. 5, 1991); *Judy v. Schaefer*, 331 Md. 239, 258-61, 627 A.2d 1039, 1049-50 (1993) (discussing Governor's authority to strike budget appropriations).

The third method identified above derives from Section 7-213(a) of the State Finance and Procurement Article ("SFP") of the Maryland Code (2009 Repl. Vol.).  Under that section, the Governor may, "with the approval of the Board of Public Works, . . . reduce, by not more than 25%,

any appropriation: (1) that the Governor considers unnecessary; or (2) that is subject to budgetary reductions required under the budget bill as approved by the General Assembly." *Id.* The position is then lost by operation of law, just as it would be if the action had been taken in the budget bill by the Governor and the General Assembly. 76 Md. Op. Att'y. Gen. 330, 1991 WL 626528 at *5.

On October 15, 2008, cuts to the fiscal year 2009 Budget were imposed by the Governor and the Board using this third method. *See* Slater Aff. ¶ 7, Ex. 2 (ECF 7-4) to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("First Motion," ECF 7). Those cuts were instituted by the Governor and the Board pursuant to SFP § 7-213(a). *See* Press Release, Governor O'Malley, Board of Public Works Cut Over $345 Million From FY09 Budget (Oct. 15, 2008), Ex. 1 (ECF 7-3) to defendants' First Motion, *available at* http://www.governor.maryland.gov/ pressreleases/081015.asp.

As a result, on October 15, 2008, McCray's position was abolished by operation of law. *See* Slater Aff. ¶¶ 6-8 (ECF 7-4). On that same day, Deets and MDOT Human Resources Director Judith Slater informed McCray that her position had been abolished as a result of budget cuts, and that her last day as a MTA employee would be October 30, 2008. Amended Complaint, ECF 36 ¶ 21.

At the meeting with Deets and Slater, McCray received a Memorandum from John D. Porcari, Secretary of MDOT. Porcari Memorandum, Attach. 2 to Ex. 2 (ECF 7-6) to defendants' First Motion. It said, in part:

> Memorandum
>
> TO:        Marie M. McCray
>              Maryland Transit Administration
>
> FROM:   John D. Porcari, Secretary
>              Maryland Department of Transportation
>
> DATE:    October 15, 2008

RE:            Position Abolition

At its meeting earlier today, the Board of Public Works approved the elimination of the appropriation for your position.  As a result, your position will be abolished on October 30, 2008.  Under paragraph 2.3 of the Transportation Service Human Resources System ("TSHRS") Policy 7-H layoff, this action is not considered a layoff.
. . . .

As noted, McCray's position was one of about 830 State jobs[3] abolished by budget cuts in October 2008.  Of the 830 State jobs that were abolished due to the FY09 budget cuts, sixty-three positions were eliminated at the MTA.  *See* Slater Aff. ¶ 7, ECF 7-4; *see also* Transp. § 4-203 ("The [MTA] is entitled to the staff provided in the State budget.").  Of these positions, approximately twenty were actually held by employees at the time; the remaining forty-three positions were unfilled.  Slater Aff. ¶ 7, ECF 7-4.  Data proffered by defendants, both in connection with charges of discrimination filed by McCray with the EEOC, *see* ECF 16-8 (EEOC report listing eliminated positions), and in support of defendants' First Motion, *see* ECF 7-5 (list of position eliminations proposed by MTA), reflected that, of the twenty MTA employees who lost positions as a result of the budget cuts, nine were classified as white, nine as African-American, one as multi-racial, and one did not report a racial classification.  Moreover, twelve were male and eight were female.  *Id.*

On April 6, 2009, McCray submitted an Intake Questionnaire to the U.S. Equal Employment Opportunity Commission ("EEOC") accusing the MTA of employment discrimination based on her termination.  McCray EEOC Intake Questionnaire ("Intake," ECF 16-1).  She checked only the box

---

[3] Based on an exhibit to defendants' First Motion, it appears that only 40 of these positions were actually held by employees at the time the positions were eliminated.  *See* Dep't of Budget & Mgmt. Action Agenda, Ex. 5, ECF 7-10.

indicating age discrimination, and she left blank the section of the form inquiring about whether she had any disabilities.  *Id.*  McCray filed a formal Charge of Discrimination with the EEOC on June 29, 2009, alleging discrimination by MTA only on the basis of age.  "Original Charge," ECF 16-7 at 5.

McCray filed an amended charge more than a year later, on September 20, 2010 ("Amended Charge," ECF 16-7 at 8), adding allegations and checking boxes for discrimination on the basis of race, gender, and disability.  McCray did not name MDOT as a defendant in either of her EEOC charges.  ECF 16-7 at 5, 8.

The "particulars" of the Amended Charge provided, in their entirety, as follows, with amended additions in italics:

I.  I began working for the above employer on January 4, 1971, as a Draftman and later promoted to an Engineering Technician IV.  *On June 14, 2007*, I became ill on the job.  The new Deputy Director Michael *Deets* tried to get rid of me after I was cleared from my doctor to return to work.  After their doctor found me fit for duty, I was harassed daily by the Deputy Director about my ability to work.  On October 15, 2008, I was told by Human Resources Director, Judy Slater *and Simon Taylor* (sic) that I was being laid off from my job and that my last day would be October 30, 2008.  My employer did not try to help me find another job.  All the remaining employees were a lot younger than me.   Another older employer (sic) Jean Cox (age 70's) was let go around the same time I was.  *A total of 13 females over the age of 40 have also been discharged.*

II.  My employer stated that I was laid off because my position was abolished.

III. I believe that I have been discriminated against because of my age (64) in violation of the Age Discrimination in Employment Act of 1967 (ADEA), *race (Black), sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, retaliated against for engaging in a protected activity and in violation of Title I of the Americans with Disabilities Act of 1990 (ADA),* with respect to discharge.

*IV. I further believe females as a class have been discriminated against because of their sex (female), race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended and retaliated against for engaging in a protected activity and because of their age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), with respect to discharge.*

- 8 -

ECF 16-7 at 8.

Notably, neither the EEOC Intake nor the charges mention that Deets had transferred McCray's report duties to an outside consultant, or that McCray had been repeatedly refused new work thereafter. *See* ECF 16-1 at 2; ECF 16-7 at 5, 8. On February 23, 2011, MTA submitted a "Response to [the] Particulars" of Allegations I and II in McCray's Amended Charge. ECF 16-7 at 2-3. The response makes no mention of McCray's duties having been transferred or of her subsequent requests for work. *Id.*

On September 26, 2011, the EEOC notified McCray by letter that it could not conclude that she was subjected to unlawful discrimination. *See* Letter Dismissing EEOC Charges, ECF 16-6 at 1. It also notified McCray of her right to sue in federal court. *Id.* at 2. The letter described investigations into the elimination of McCray's position and her "allegations of harassment by the Deputy Director, Michael Deets." *Id.* at 1. As to the latter, it made no mention of McCray's loss or lack of job duties. *Id.* at 1-2 (concluding, at 1, that "investigation did not show that Mr. Michael Deets harassed [McCray] in any way by asking [McCray] about the status of [her] health").

### Standard of Review

Defendants' Motion is premised in part on Fed. R. Civ. P. 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Moreover, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Pursuant to Fed. R. Civ. P. 12(h)(3), "the court must dismiss the action" if it determines that it lacks subject matter jurisdiction "at any time."

Once challenged, the plaintiff bears the burden to prove that the court has subject matter jurisdiction.  *See, e.g.*, *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  In ruling on a motion under Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647.  The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.* (quoting *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992)).

Defendants' Motion is also premised on Fed. R. Civ. P. 12(b)(6), apparently in relation to arguments that some of McCray's claims are barred by statutes of limitations.  In considering a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and quotations omitted); *see also, e.g.*, *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (stating courts must construe the facts "in the light most favorable to the nonmoving party"), *cert. denied*, --- U.S. ----, 132 S. Ct. 402 (2011).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *See, e.g.*, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  Nor must it accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "legal conclusions drawn from the

facts." *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009) (quoting *Jordan v. Alt. Research Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)), *cert. denied*, --- U.S. ----, 130 S. Ct. 1740 (2010).

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Rule exists primarily to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Francis*, 588 F.3d at 193; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 555 n.3 (2007).

However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464; *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies … if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added in *Goodman*).

Similarly, although the usual rule is that a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein," *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), a court *may* properly consider documents

"attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Anand v. Ocwen Loan Servicing, LLC*, ____ F.3d ____, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014); *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see also New Beckley Mining Corp. v. UMWA*, 18 F.3d 1161, 1164 (4th Cir. 1994) (holding district court did not err in relying on document that plaintiff referred to in its complaint to justify cause of action).[4]

## Discussion

In her Amended Complaint, McCray retained the ADEA and Title VII claims from her Original Complaint, and added three new claims, alleging violations of the Maryland Fair Employment Practices Act, the Rehabilitation Act, and Title II of the ADA.  I will dismiss McCray's ADEA claim, for the reasons previously stated by the Fourth Circuit.  For the reasons discussed below, I will dismiss the Title VII claims under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6), because they were not timely filed with the EEOC.  Similarly, I will dismiss McCray's new claims under Fed. R. Civ. P. 12(b)(6), as it appears on the face of both the Original Complaint and the Amended Complaint that each of these claims is barred by any applicable statute of limitations.

---

[4] As explained below, the Original and Amended Charges submitted by McCray to the EEOC and to this Court meet these criteria and thus may be considered under a Rule 12(b)(6) standard.  *See infra.*

1.

On appeal, defendants argued "that sovereign immunity bars McCray's age and disability claims" under ADEA and Title I of the ADA.[5]  *See McCray*, 741 F.3d at 482-83.[6]  The Fourth Circuit agreed.  *Id.* at 483.  The issue of sovereign immunity is jurisdictional and thus is a question that a court may consider "'at any time, even *sua sponte*.'"  *Id.* (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997)).  McCray has provided no argument in her Opposition as to why this Court's decision should now be any different.  *See* Opposition, ECF 48 at 1-4.  "Thus, absent waiver of sovereign immunity, McCray's ADEA … clai[m] must be dismissed," *McCray*, 741 F.3d at 483, because this Court lacks jurisdiction to consider the claim. *See* Fed. R. Civ. P. 12(b)(1).

2.

McCray's Title VII claim must be dismissed under Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction to consider it.  In ruling on a motion under Rule 12(b)(1), I "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Evans*, 166 F.3d at 647.  As defendants observe, and as is clear from

---

[5] The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." Under this Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  That immunity also applies to agencies and instrumentalities of a State.  *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray*, 741 F.3d at 483.  Congress "may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'"  *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 73 (2000)). But, "[s]overeign immunity has not been abrogated for ADEA claims and ADA Title I claims." *McCray*, 741 F.3d at 483.

[6] Defendants never made that argument before this Court.

McCray's Original and Amended Charges, McCray has failed to exhaust administrative remedies with regard to her allegations pertaining to the period prior to the budget cuts. McCray never presented the EEOC with any claims relating to her diminished responsibilities, and those are the only alleged discriminatory acts not barred by legislative immunity under the Fourth Circuit's holding in this case. *McCray*, 741 F.3d at 485-86. Allegations before a federal court that did not appear in a charge before the EEOC must be dismissed for lack of subject matter jurisdiction.

Title VII requires a potential plaintiff to file a charge with the EEOC before filing suit in a federal court. 42 U.S.C. § 2000e-5(f)(1) (2006) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also*, *e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).[7]

---

[7] For a description of the full process, *see Balas*, 711 F.3d at 407.

In keeping with Congressional intent, Title VII's exhaustion requirement also functions as a jurisdictional bar in federal courts where plaintiffs have failed to meet it.  In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process.  *See*, *e.g.*, *Jones v. Calvert Group*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491.

To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency."  *Balas*, 711 F.3d at 408 (emphasis added); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation.").  Courts may not look to a plaintiff's intake questionnaire, *Balas*, 711 F.3d at 408, or to other letters sent to the agency, *id.*; *see also Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (holding that plaintiff's letters to the EEOC did not amend the charge and could not be considered in exhaustion analysis).  Limitation of judicial review to a plaintiff's formal charges ensures that the administrative process functions as Congress intended, by clarifying and documenting a claimant's concerns, providing notice to

affected employers, and enabling informal resolution of the dispute.  *See Balas*, 711 F.3d at 408; *Sloop*, 198 F.3d at 149.

Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain."  *Balas*, 711 F.3d at 408 (citations and quotation marks omitted).  Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof … .'"  *Balas*, 711 F.3d at 407-08 (citations omitted).  "A charge" itself "is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' 29 C.F.R. § 1601.12(b) (2004)."  *Chacko*, 429 F.3d at 508.  "A plaintiff fails to exhaust his [or her] administrative remedies where … [the] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [a] formal suit."  *Id.* at 506; *accord Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Here, the only employment practice alleged in McCray's EEOC charge involved the elimination of her State position from the State budget.  Amended Charge, ECF 16-7 at 8.  *McCray* makes clear that any claims arising from this employment practice are barred by legislative immunity.  *See* 741 F.3d at 485 (concluding that "enacting a budget is a legislative act" and "the district court's conclusion is correct insofar as it shields the MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts") (internal quotations omitted).

Neither McCray's Original Charges nor her Amended Charges made any mention of the allegations in her complaint pertaining to conduct of the employer in the period prior to the

budget cuts, such as her loss of job duties.  *See* ECF 16-7 at 5, 8; *see also* Original Complaint ECF 1, ¶¶ 19, 20 (alleging loss of job duties).  However, the remand was predicated on such allegations in the suit.  *McCray*, 741 F.3d at 486.  McCray did allege in her EEOC charges that she was "harassed daily by the Deputy Director about [her] ability to work."  ECF 16-7 at 5, 8.  But, an allegation of harassment about one's ability to work is not the same as an allegation that one has been stripped of duties.  Moreover, allegations that "her supervisor at the MTA stripped her of responsibilities in the years leading up to budget cuts" and "refused to give McCray additional responsibilities," *McCray*, 741 F.3d at 486, "'would [not] naturally have arisen from an investigation'" of her harassment charges.  *See Balas* 711 F.3d at 407-08 (quoting *Chacko*, 429 F.3d at 506) (alteration added).  The allegations in McCray's complaint "reference different time frames … and discriminatory conduct" than those included in McCray's administrative charges.  *See Chacko*, 429 F.3d at 508.

Indeed, defendant MTA's response to McCray's allegations during the EEOC process (ECF 16-7 at 2-3) and the final response of the EEOC itself (ECF 16-6) both fail to mention McCray's loss or lack of duties, showing that neither of her charges did in fact give rise to an investigation of the pre-budget-cut acts alleged in her suit.  Thus, consideration of these claims now would subvert Congress's intent that parties first try to resolve disagreements out-of-court, *cf. Miles*, 429 F.3d at 491; *Balas*, 711 F.3d at 407, and is beyond this Court's subject matter jurisdiction.  *Balas*, 711 F.3d at 406; *Jones*, 551 F.3d at 300-01.

In her Opposition, plaintiff argues that "where the [Fourth Circuit] has recognized the viability of an action for employment discrimination that begins at one point prior to a budgetary decision so as to avoid the bar of legislative immunity but which may culminate in its adverse

impact to the plaintiff in the loss of employment occasioned by the budgetary cut — the Court's acknowledged 'lightning rod' framework — a charge of discrimination which alleges discrimination as a result of subjecting a[n] aggrieved employee to such a consequence … is sufficient to satisfy the administrative exhaustion requirements of Title VII and other federal and relate[d] State provision[s]."  ECF 48 at 2.  Plaintiff appears to believe that the Fourth Circuit's remand effectively authorizes her claim for consideration on the merits.  However, *McCray* does not so hold.  Indeed, it did not address exhaustion at all.  *See generally McCray*, 741 F.3d 480. Although it is true that McCray's allegations concerning the period prior to the budget cuts are not barred by legislative immunity, they must nonetheless be otherwise cognizable.

Accordingly, I must dismiss McCray's remaining Title VII claim for failure to exhaust, resulting in a lack of subject matter jurisdiction.  Moreover, I will dismiss the claim with prejudice because, as discussed below, it is not possible for McCray to avail herself of these remedies in a timely manner.

### 3.

McCray's remaining Title VII claim must also be dismissed under Fed. R. Civ. P. 12(b)(6) because McCray failed to file any race-based or sex-based discrimination claims with the EEOC in a timely manner.  The Supreme Court has held that "filing a timely charge … is not a jurisdictional prerequisite to suit in federal court, but [is] a requirement … like a statute of limitations," an affirmative defense.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Jones*, 551 F.3d at 300 n.2 ("In *Zipes*, the Court held only that the *untimeliness* of an administrative charge does not affect federal jurisdiction over a Title VII claim … .") (citations omitted) (emphasis in original).  Nonetheless, the Fourth

Circuit has held that an affirmative "defense may be reached by a motion to dismiss filed under Rule 12(b)(6)" where "facts sufficient to rule on [it] are alleged in the complaint." *Goodman*, 494 F.3d at 464.

As noted, in resolving a Rule 12(b)(6) motion, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defendants' motion, "so long as they are integral to the complaint and authentic." *Phillips*, 572 F.3d at 180. Here, I may consider McCray's EEOC Charges because these documents are integral to the complaint and authentic. The charges are integral to the complaint because McCray implicitly relies on them to justify her cause of action. *See New Beckley Mining Corp.*, 18 F.3d at 1164. And, McCray does not dispute their authenticity — McCray herself submitted them to this Court in support of her Memorandum in Opposition to Defendants' First Motion, when this case was first before this Court. *See* Memorandum, ECF 16 at 11 (relying on "Attachment 4"); "Exhibit Attachment 4", ECF 16-7 (proffering the EEOC charges). Consequently, I may consider these documents in resolving defendants' 12(b)(6) motion. *See, e.g.*, *Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab.*, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013) (court may consider a charge of discrimination attached to motion to dismiss where the charge is integral to the complaint and where its authenticity is undisputed); *Betof v. Suburban Hosp., Inc.*, 2012 WL 2564781, at *3 n.6 (D. Md. June 29, 2012) (same); *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (a court may consider a charge of discrimination attached to motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected).

Title VII "establishes two possible limitation periods for filing a charge of discrimination with the EEOC." *Jones*, 551 F.3d at 300.  "'The basic limitations period is 180 days after the alleged unlawful employment practice [occurred].  However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Id*. (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)) (alteration added).  Thus, Title VII provides that an administrative charge must be filed with the EEOC, at the latest, "three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1)); *see also*, *e.g.*, *Chacko*, 429 F.3d at 508.  "Timeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000); *see also Nat'l R.R. Passenger Corp. v. Morgan (Amtrak v. Morgan)*, 536 U.S. 101, 108-09 (2002).

In *Morgan*, 536 U.S. at 108-21 (quoting 42 U.S.C. § 2000e-5(e)(1)), the Supreme Court clarified "[w]hat constitutes an 'unlawful employment practice' and when … that practice 'occurred.'"  It noted that the Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts," *id*. at 111, and that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id*. at 114.  It determined that a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id*. at 110 (referencing Webster's Third New International Dictionary for definition of "occur").  Therefore, it concluded that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges

alleging that act."  *Id*. at 113.  The Court stated, *id*. at 110: "A party … must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."  Accordingly, the Court reversed the lower court's holding that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability."  *Id.* at 114.

That said, EEOC regulations do permit "relation back" of amended charges "to the date the charge was first received" in certain circumstances.  29 C.F.R. § 1601.12(b).  "A charge may be amended to cure technical defects or omissions … or to clarify and amplify allegations made therein."  *Id*.  Amendments that "alleg[e] additional acts which constitute unlawful employment practices *related to or growing out of the subject matter of the original charge* will relate back to the date the charge was first received."  *Id*. (emphasis added).

The Fourth Circuit has said that claims alleging different bases of discrimination "do not necessarily flow" from one another.  *Evans*, 80 F.3d at 963 ("[A]ge discrimination does not necessarily flow from sex discrimination and vice versa.") (citing in part *Rizzo v. WGN Cont'l Broad. Co.*, 601 F. Supp. 132, 134-35 (N.D. Ill. 1985) (holding "untimely amended claim of sex discrimination does not relate back to the original charge of age discrimination because the allegations could not be inferred from it")).  Put another way, claims referencing the same underlying employment practices but alleging different bases of discrimination do not necessarily relate to or grow out of the same subject matter.  *Cf. Sydnor*, 681 F.3d at 593-94 (4th Cir. 2012) ("We have … not found exhaustion where a charge alleges only racial discrimination but the complaint includes sex discrimination, *Bryant v. Bell Atlantic Md., Inc.*, 288 F.2d 124, 132-33 (4th Cir. 2002), or where a charge alleges only retaliation but the complaint alleges racial

discrimination as well, *Jones*, 551 F.3d at 301.").  This too is in keeping with Congressional intent: "[P]ermitting a late amendment to an original discrimination charge adding an entirely new theory of recovery would eviscerate the administrative charge filing requirement altogether by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency." *Evans*, 80 F.3d at 963 (internal quotation marks and citations omitted).

In this case, the Fourth Circuit ruled that, on remand, McCray may pursue her Title VII sex discrimination and race discrimination claims with regard to "discrimination that occurred before any legislative activity [surrounding the fiscal year 2009 Budget cuts] began." *McCray*, 741 F.3d at 487.  However, McCray has failed to timely file with the EEOC any charges relating to such discrimination, or any charges at all alleging "discrimination that occurred before any legislative activity began."

McCray's Original Charge was filed on June 29, 2009, and alleged only age-based discrimination.  ECF 16-7 at 5.  As shown above, in the "particulars" of her charge, she alleged that she had "been discriminated against because of [her] age." *See* ECF 16-7 at 5.  Additionally, in the field labeled "Discrimination Based On," McCray checked a box next to "Age," but did not check boxes next to "Race" or "Sex." *Id.*  McCray's Amended Charge did allege sex-based and race-based discrimination, but was filed more than a year later, on September 20, 2010.  *See* ECF 16-7 at 8 (showing boxes checked next to "Race," "Sex," "Retaliation," "Age," and "Disability").  The most recent alleged discriminatory act in both charges occurred in 2008.  ECF 16-7 at 5, 8 (alleging most recent act on October 30, 2008, which was her budget-cut-related termination date).

Because "age discrimination does not necessarily flow from sex discrimination and vice versa," *Evans*, 80 F.3d at 963, and because McCray's Original Charge gave no notice to the employer or to the investigating agency that she was alleging sex-based or race-based discrimination, *id*., McCray's Amended Charge alleging sex-based and race-based discrimination does not relate back in time to the date that her Original Charge was filed.  It was filed more than three hundred days after the most recent alleged discriminatory act.  Thus, the sex-based and race-based charges in it were not timely filed.

As McCray never timely filed any claims relating to sex-based or race-based discrimination, it is now too late for her to do so.  *See Morgan,* 536 U.S. at 110 ("A party … must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").  Accordingly, McCray failed to exhaust her administrative remedies with regard to her sex and race discrimination claims under Title VII.

Moreover, as discussed above, McCray never filed *any* charges with the EEOC alleging discriminatory employment practices prior to the budget cuts.  *See* ECF 16-7 at 5, 8; *McCray*, 741 F.3d at 485-86.  Because any such acts occurred in 2008, and more than three hundred days have passed since those acts, it is now too late for McCray to file new charges alleging discriminatory acts that occurred prior to the budget cuts.  *See Morgan*, 536 U.S. at 110.  And, as just discussed, there are no timely filed charges of sex-based or race-based discrimination to which McCray could relate back any newly filed charges.  Therefore, McCray's Title VII claims must be dismissed with prejudice.

4.

McCray has also added a claim that defendants violated the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2009), § 20-606(a)(1)(i) of the State Government Article, for "Unlawful employment practices."  ECF 36 at 2.

The MFEPA "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc.*, Civ. No. RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority.  *See, e.g.*, *Taylor v. Giant of Md., LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766, 772 (1990); *Md. Shipbuilding & Drydock Co., Inc. v. Md. Comm'n on Human Rel.,* 70 Md. App. 538, 545-50, 521 A.2d 1263, 1266 (1987); *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 200 n.8, 66 A.3d 1152, 1166 n.8 (2013).  And, plaintiff has not asserted a distinction between her federal and state discrimination claims.  Accordingly, I will apply the same standards to my analysis of plaintiff's state and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

State statutes of limitations apply to state claims in federal courts.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  S.G. § 20-1013 provides that "a complainant may bring a civil action … alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge … ; (2) at least 180 days have elapsed since the filing … ; *and* (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred." (emphasis added).  The Supreme Court has held that, in the context of Title VII, "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Morgan*, 536 U.S. at

110.   Federal courts of appeal have applied *Morgan's* accrual rule to civil rights claims generally, including to the Rehabilitation Act.  *See, e.g.*, *Ervine v. Desert View Regional Medical Center Holdings*, *LLC*, 753 F.3d 862, 869 (9th Cir. May 29, 2014) ("Although [*Morgan*] concerned Title VII … , we [have] noted that it applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws.") (quotations omitted); *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (applying *Morgan* to Rehabilitation Act claim).

Here, under both state and federal law, the most recent potentially unlawful employment practice "occurred" on October 30, 2008.  *See* ECF 36 at 7.  Even if the allegations in the Amended Complaint relate back to the Original Complaint under Maryland law, the Original Complaint was filed more than two years after the occurrence of the most recent alleged unlawful employment practice.  *Compare* Original Complaint, ECF 1 (filed Dec. 27, 2011) *with* Amended Complaint, ECF 36 at 7 (alleging McCray's last day of work for defendants was on October 30, 2008, and not alleging any other interactions with defendants after that date).

McCray argues in her Opposition that "the statute's two-year limitations provision has no application" because plaintiff's claims "are subject to the administrative requirement otherwise applicable to Title VII and the related administrative exhaustion requirements of … the ADEA and the ADA."  ECF 48 at 2.  Although it is true that McCray's MFEPA claims are subject to an administrative filing requirement, S.G. § 20-1013(a)(1), this requirement is in addition to the requirement that any "civil action" be filed "within 2 years after the alleged unlawful employment practice occurred."  S.G. § 20-1013(a)(3).  As quoted above, the statute provides three requirements that a complainant must satisfy in order to pursue a civil action.  The use of

"and" between these three requirements unambiguously commands that a complainant meet all three requirements, not just any one of them.  *See* S.G. § 20-1013(a).

Thus, it appears on the face of both McCray's Original Complaint and Amended Complaint that she has failed to file her MFEPA claim within two years of the most recent alleged unfair employment practice.   Accordingly, McCray's MFEPA claims are subject to dismissal, with prejudice, as time-barred.

5.

Finally, McCray's remaining claims under Section 504 of the Rehabilitation Act and Title II of the ADA are also time-barred.

Neither the Rehabilitation Act nor Title II of the ADA contains its own specific statute of limitations.  *See Society Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (Title II of the ADA); *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994) (Rehabilitation Act).   The catch-all federal statute of limitations, codified at 28 U.S.C. § 1658, does not apply here because McCray's claims arise out of provisions enacted before the adoption in 1990 of this catch-all limitation.  *See Society*, 655 F.3d at 347 (holding § 1658 does not apply to Title II of the ADA and citing *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004)); *Jeandron v. Bd. of Regents of Univ. of Md.*, 510 Fed. App'x 223, 226 (4th Cir. 2013) (applying state statute of limitations to ADA and Rehabilitation Act claims).   In the absence of an applicable federal standard, McCray's claims are governed by "the state statute of limitations that applies to the most analogous state-law claim."  *Society*, 655 F.3d at 347 (citing 42 U.S.C. § 1988 and *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)); *see also Wolsky v. Medical Coll. of*

*Hampton Roads*, 1 F.3d 222, 223 (4th Cir. 1993) (applying most-analogous-state-law standard to Rehabilitation Act).

To determine which state-law claim is most analogous, courts look to the rights and remedies provided, *Wolsky*, 1 F.3d at 224, and the persons the law intends to protect. *McCullough*, 35 F.3d at 132. Federal law determines when both claims began to accrue. *See Society*, 655 F.3d at 348 (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Under federal law, "[a] civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Society*, 655 F.3d at 348 (quoting *Cox*, 529 F.2d at 50).

Defendants argue that the MFEPA is the most analogous state-law claim to McCray's Rehabilitation Act claim. ECF 37-1 at 15. "MFEPA," defendants argue, "similar to the Rehabilitation Act, prohibits discrimination in employment because of an individual's disability and provides for an individual private right of action." *Id.* Thus, MFEPA's two-year statute of limitations, S.G. § 20-1013(a), should also apply. *Id.* Defendants further note that an unreported Fourth Circuit opinion, issued in 2013, applied a general three-year statute of limitations, and did not involve amendments to Maryland law made in 2007. *See Jeandron*, *supra*, 510 Fed. App'x 223. Rather, the "opinion relied exclusively on federal District of Maryland cases that were decided *before* 2007, the year in which Maryland amended its civil rights statute to create a private right of action for employment discrimination, and those opinions analyzed only the six-month statute of limitations for filing an administrative complaint in MFEPA's predecessor statute … ." ECF 37-1 at 16 (emphasis in original). In any event, defendants assert that plaintiff's Rehabilitation Act and ADA claims are time-barred under either a two-year or three-year limitations period. ECF 37-1 at 16; ECF 49 at 4 n.1.

Plaintiff responds that her "disability discrimination claim under Section 504 of the Rehabilitation Act is subject to a 3-year, not a 2-year limitations period, and that claim is not, therefore, time-barred." Opposition, ECF 48 at 2.

Defendants are correct that plaintiff's claims are time-barred under either a two-year or three-year statute of limitations. As discussed above, the most recent alleged discriminatory act occurred on October 30, 2008. Amended Complaint, ECF 36 at 7. Plaintiff knew of this act as of that date, indeed, as of two weeks before it. *See id.*; *Society*, 655 F.3d at 348 ("A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.") (internal quotations omitted). Under Fed. R. Civ. P. 15(c)(1), an "amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct … set out — or attempted to be set out — in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted… ."

Even assuming the claims raised in plaintiff's Amended Complaint relate back to the date of her Original Complaint under Fed. R. Civ. P. 15(c)(1), McCray's Original Complaint was filed on December 27, 2011, more than three years after October 30, 2008. *See* ECF 1. Thus, I need not decide whether Maryland's general statute of limitations applies, as many courts in this Circuit have held, *see*, *e.g.*, *Jeandron*, 510 Fed. App'x at 226 (applying general limitation to Rehabilitation Act and ADA claims and citing prior decisions), or whether MFEPA's limitation period applies, as defendants urge. McCray's Rehabilitation Act and ADA claims are time-barred either way, and thus subject to dismissal, with prejudice.

- 28 -

**Conclusion**

For the foregoing reasons, I will grant defendants' Motion (ECF 37).  A separate Order

follows, consistent with the Memorandum Opinion.


Date: September 16, 2014                              _____/s/_____
                                                     Ellen Lipton Hollander
                                                     United States District Judge